Good afternoon, your honors, counsel. Thomas Dell on behalf of DHL. This is a matter in which the petitioner was, just before Christmas, unloading some liquor from the back of his truck, was having a hard time getting it out, injured his back. We have no problem with the back injury. He had a couple of surgeries, a fusion. There's no question that that was a compensable injury. The problem we have here is that the commission took it upon itself to make an award for the left knee, and specifically the condition of ill-being in that knee, without really telling us what condition of ill-being that was, or how, in fact, he injured it. The arbitrator, when faced with the question, looked at it, looked at what's wrong with his knee, and said, well, he must have injured that during physical therapy, since he didn't do it in the accident. And the commission took it upon itself then to say, no, no, no, don't be stupid. Obviously, he did it in the accident. The question is, what is the if he's got torn up ligaments, the knee is basically a mess. The commission goes back to the original records. His first medical was on December 23, 2004, which would be three days after the accident. And there's no mention of his knee at all. It's all low back. And that is the preliminary diagnosis, back strain, rule-out, sciatica. Everything's in the back. Now, wait a second. Didn't he go to receive treatment, first do visits with advocates? Don't those reports reference pain in the left knee and left lower extremity? They reference radiating pain down to the knee until January 3rd. And that's Dr. Payne. And his report on that day, he talks about subjectivity. It's all about the back, and it's all about radiating pain down the leg. And then, he also, this is the final edition, he also complains of left knee pain that he strained at the time he hurt his back. It is not that it is problematic, but he notes some mild swelling around the peripheral area of the knee. But wouldn't there be evidence of an injury? Well, that's, again, it. That's what the commission, they said, ah-ha, he has a something wrong with his knee. And we don't care if it's a boo-boo or what it is, we're going to give him a whole knee, an operated knee, knee replacement, whatever he wants, it must be related. Now, what does the examination show? It says, he also complains of left knee pain that he strained. Examination of the left knee shows mild preference with patellofemoral motion, equivocal apprehension. Otherwise, he does not have any significant knee pathology. No patellofemoral swelling is noted. Negative anterior-posterior drawer sign is, are elicited. So that's his ACL, that's no problem. Negative lagman is noted. There is no medial or lateral collateral ligament instability. McMurray is unremarkable. So basically, if he's got anything wrong with his knee, he might have a strain, but that's not the condition of ill-being that the commission is giving an award for. What does his own doctor say? This is Dr. Collins. On December 7, 2005, he says, I have told the patient that anyone with arthritis in the lateral compartment, to the severity that he has it, is certain to have some degenerative tearing of the lateral meniscus. And I would not want to mislead him into thinking that an arthroscopy is going to make his knee perfect. On the other hand, the patient is having significant symptoms and an arthroscopy is likely to give him some benefit, even if we have no way of telling exactly how much. I read all this from the patient. There's no prior history of knee problems prior to the alleged incident. And the doctors say he must have had, there's no history that he had medical treatment for it, but that doesn't mean he didn't have some symptoms. And, well, he presents as being asymptomatic until the trauma of December 2004. So he has decided that it's related. Unfortunately, his doctor says it's basically inevitable. And our doctor, the IME doctor, agrees with the treating doctor. He agrees with everything he says, except he wouldn't bother with the arthroscopy. This guy is going to need a knee replacement. And he refers to it, he says, it's my impression this man clearly had advanced arthritis of his left knee prior to the December 20, 2004 incident. I am in agreement with Dr. Collins, his treating doctor, that this type of end-stage arthritis would be far more common than not to have an associated degenerative meniscal tear. This guy had a minor, if anything, he had a minor strain. And a few months later, he's got end-stage arthritis. No doctor says that it's connected. No doctor says it's related, aggravated, or anything else. Dr. Collins said, and it was undoubtedly torn ahead of time, something like this. Might have torn it a little more, nobody knows. But nobody says that there's any relation, no medical person says there's any relation between what he says was the twisting injury and strain, his own diagnosis was strain, and the condition of ill-being that's causing him to have surgery. Well, what about if he aggravated a pre-existing injury? Well, if his doctor said, if Dr. Collins said this aggravated, or this accident aggravated this pre-existing condition and resulted in a condition that now requires surgery and further medical care, that would be one thing. It is not in here. So that's the only way a claimant can recover is with opinions of doctors? Is that what you're saying? As a matter of law? I'm not even saying that's the state of the record, but according to your argument, he needs medical testimony to make out his case. He needs some medical testimony that doesn't say this guy's got end-stage arthritis, it's pre-existing, and the doctors, with all this treatment, all these records in here, and all these doctors have looked at them, not one has ever said this was an aggravation. Do they need to? Yes, I think so. Because there's no real connection, because you're just basically jumping to a conclusion. You're saying, well, the doctors didn't say anything about this, but I'm going to presume that I will follow the chain of events that he did. And he testifies, shortly afterwards, he hurt his knee. He's saying that, gee, my knee was just so perfect, and then these evil persons hurt my knee, I'll back the truck up to collect the money. I would go back to what the actual records say. He says, I've got a little knee strain here, and now you're going to It may just be a knee strain. What we have here is, when we look at the appellant's response, appellant's response, if you look at Mr. Leary's response, Leahy's response, the continued complaints throughout, he points out, is to weakness in his left leg, drop of the foot, and so on. Well, he went to Dr. Zellbee that he chose, and he went to Dr. Zunderich that he chose, and both of these spinal surgeons seem to think that that's all related to his L5 nerve root, the undisputed low back surgeries that we of a bad knee causing foot drop, and apparently these silly spinal surgeons didn't either. But the commission says, well, it must be related, it had to do, it was his left leg, close enough. This is government work, case closed, next case. That just is not, is not supported by anything in this record. The doctors say, he had, his own doctor said, that it's, this bad is inevitable, he's going to have these tears, and he's going to need a knee replacement. Our doctor agrees with his doctor. Everybody's in agreement, except the commission says, and it all must start with this injury when he hurt his back. There's nothing there suggested by the doctors. If you have doctors, then you should ask them that question. You can't just be silent and then say, well, the doctors didn't say it, but I will say it. It's obviously a chain of events. It's post hoc ergo propter hoc. What was that again? Post hoc ergo propter hoc. After this, therefore, because of this. After this, therefore, because of this. It's the, it's the case of we had good crops after the virgin fell in the volcano, so if we throw in a virgin every year, we'll have good crops. That's not a bad idea. Temporal correlation is not causative relation, and that's what we have here. He had a, maybe he had a knee strain at the time. Probably did. But did that cause the condition of ill-being that we're being asked to pay for, which is this torn up knee? And the answer is no. And they couldn't even agree with the arbitrator. They couldn't, they couldn't pin it down as to where it is. So I believe that there is no causal connection, and therefore, $11,000 of the medical should be out, as should the finding of permanence for the knee. The back, we've got. We'll take that. Thank you. Counsel, please. Thank you. May it please the Court. Mr. Dole, I represent Mr. Leahy. My name is Richard Alexie. And I, I apologize for, for being momentarily hesitant in responding to counsel's argument because I wanted to ensure. Your comment? That he, well, more precisely, that he and I were talking about the same set of facts in the same case. If you read the arbitrator's decision, which is in the record, the arbitrator goes through the recitation of the facts and discusses his findings with regard to causality. And it is apparent from the decision of the arbitrator that he finds that the condition of ill-being for which Collins treated him was, in fact, related, but not directly. Now, in Illinois, until the legislature finally gets around to changing this stuff in the spring session or thereafter, in Illinois, we have a situation where if an event causes, aggravates, or accelerates an underlying condition, then it is covered under the workers' compensation. This forum, you five justices, confront this every time you hear oral arguments, arguments essentially like Mr. Dole raises today. Woe is me, my core client, collateral resources, and so on. Well, in an ideal world, Mr. Leahy, who toiled for this company for a number of years before it became DHL, it was airborne, and so on, if there was a way to monitor him, either with a pedometer or serial MRIs or something, perhaps we could grade the erosion of the health of his knee compartments and then determine when the ultimate event happens, as Dr. Cohen posits, then we can say, oh, DHL, you got lucky. It happened in the garage when the straw finally broke the camel's back, as opposed to removing a 70-pound case of liquor from the back end where he says to the company clinic, I twisted my knee and I hurt my back. Now, behavioral psychologists have for years postulated, in fact, there's a lot of discussion now about the efficacy of eyewitness testimony, and I'm sure you're privy to that. I didn't mention my brief, so I won't go there. But the fact of the matter is, what Mr. Dole wants you to decide, and he puts this in his reply brief, this mixed question of fact and almost gets the law, which we know that that's inappropriate, so I won't address that either. But what he's saying is this. If a person has an event at work, then all of his symptom complex must present themselves immediately, because if they do not, the causal element of the condition of ill-being moving forward is extinguished. You read Dr. Cohen's report where he talks about the significant degrading of this man's meniscal tissue and the compartment and the hauling packages in and out of a truck, going back and forth, and never went to a doctor for any complaints to his knee. I have to venture the guess that there were times when he came in, home from his day's labors, that he had to take a little Bengay, pop a little Advil or whatever. Not in the record. I won't speculate. But the fact of the matter is, the burden for the commission is not to accept or reject the arbitrator, but to determine whether or not they are in agreement, and if not, they modify it. Counsel in his brief suggested that the commission disagreed with the arbitrator. I take exception to that. He didn't, they didn't disagree. They said that the arbitrator failed to or didn't find any of these indicia of trauma early on because he didn't speak to these records. And then they list them. They list them. They list the fact that the guy is complaining of his knee. They list the fact that he gives substance to the notion that he twisted his knee. All of these things, since the beginning of time, as codified in Angerstein before Larson, has always been an acceptable consequence of an on-the-job injury. And yet here we are, taking up your time, delaying the payment to my client, including the unchallenged portion of this award, the permanency for the Bengay. Why? Because somebody decided that when there wasn't an immediate presentment of left knee pain or symptoms, you know, the old bloody member, can't be related. So we fight this case and we fight this case and we fight this case and you see more than, well, you see more than I do. And yet, I commend you for your patience, both for my words and that of counsel. This decision should be affirmed. Thank you very much for your patience. Are there any questions? Thank you, Counsel. Counsel, please. Very briefly, we have now gone from injuring it in the physical therapy, as the arbitrator found, to the injury when lifting down a 30-pound rather than a 70-pound box of liquor. And now we've added on that it's cumulative trauma from years of being ignored as used as a beast of burden by the evil employer. As we all know, the blood of the workers is the murder of capitalism. You're going from philosophy to the Rolling Stones here this afternoon, you realize. In any case, there still has to be some sort of evidence. If you look at his testimony, his biggest complaint in his post-surgical from his back and so forth, his biggest complaint today is his effect on his golf game. But otherwise, he's been slaving away in the galleys and the salt mines below DHL and injured his knee that way. This seems to be kind of a take-your-pick. He's got a bad knee. He worked for DHL. Ergo, there's a causal connection and give him his money. The fact of the matter is, his own doctor said, this knee is degenerative, that the tears in the meniscus are inevitable. Our doctor agrees with that. There's no dispute among the doctors. And the job of the arbitrators in the commission when it comes to medical opinions is to choose between conflicting opinions. There are no conflicting opinions. When all the medical goes one way, they can't just make up their own because it sounds better, which is basically what they did here. And the award on the knee should not stand. We have no argument with the back. That's a condition of ill-being under the act. Thank you.